UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ADAM LAFLASH, | ) ) ) | CIVIL ACTION |
| Plaintiff, | ) ) | NO. 4:20-11565-TSH |
| v. | ) ) |  |
| TOWN OF AUBURN, STEPHEN COLEMAN, and GLENN JOHNSON, | ) ) ) ) |  |
| Defendants. | ) ) |  |

**ORDER AND MEMORANDUM ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 32)**

**February 15, 2022**

**HILLMAN, D.J.**

Plaintiff Adam LaFlash was a firefighter employed by the defendant Town of Auburn (the "Town"). In 2019, allegations emerged that the plaintiff had engaged in sexual misconduct and sexual harassment while at work. Defendant Stephen Coleman, the Chief of the Town's Fire Department, appointed defendant Glenn Johnson, a Deputy Chief of the Town's Fire Department, to investigate the allegations. Johnson sent a report to Coleman detailing a summary of his investigation, findings, and conclusions. At the end of the report, Johnson stated that the plaintiff "may be a sexual predator." After an informal hearing, at which the plaintiff responded to the allegations, Coleman terminated the plaintiff's employment. Following the termination, the plaintiff filed grievances for reconsideration with Coleman and the Town, as provided for in the collective bargaining agreement between the Town and the plaintiff's union. Both grievances were denied without a hearing. Although the collective bargaining agreement also allowed for

arbitration, the agreement vested the union, not the plaintiff, with the decision whether to pursue arbitration. Because the union decided against arbitration, no arbitration hearing was held.

The plaintiff commenced this action against Johnson for defamation (Count I), Coleman for failing to convene a post-termination hearing in violation of his due process rights under 42 U.S.C. § 1983 (Count II), and the Town for injunctive relieve in the form of a post-termination hearing (Count III). The defendants move for summary judgment. (Docket No. 32). For the following reasons, the Court ***grants*** their motion.

## Background

The plaintiff began working at the Town's Fire Department in October 2009. He was promoted to the rank of lieutenant in July 2017. In April 2019, he was placed on paid administrative leave due to criminal charges, unrelated to this case, pending against him. At that time, Coleman told the plaintiff not to have any contact with Fire Department personnel while on leave.

In October 2019, while the plaintiff was still on leave, someone reported that the plaintiff had bragged about having multiple sexual encounters with Town employees while at work and using a Town vehicle to visit someone to have sexual relations during work hours. On October 28, 2019, Coleman appointed Johnson to investigate the allegations.

*1. The Report*

On December 23, 2019, Johnson sent Coleman a report detailing his investigation, findings, and conclusions. The report, a redacted version of which is in the record, summarizes the investigation in three main parts: (A) allegations of sexual misconduct and sexual harassment of female employees; (B) allegations of sexual misconduct and sexual harassment of male employees; and (C) allegations that the plaintiff violated his administrative leave order.

As to sexual misconduct and harassment of female employees, the report details interviews with eight individuals, including the plaintiff.[1] One individual reportedly stated that she had a relationship with the plaintiff outside of work that ended in 2013. They never had sexual relations at work. After the relationship ended, however, the plaintiff continued to pursue her, including while at work. He would brush up against her, pull her by her pants into his crotch, grab her backside, and change his body position so that his crotch would touch her. She constantly had to ensure that she was not alone with him, and once, he showed up at her house unannounced. The plaintiff reportedly stated that his relationship with this individual was strictly sexual and that, in his view, the relationship had never ended.[2] He agreed that they never had sexual relations at work. He believed that everything was consensual.

Another individual reportedly stated that she had a relationship with the plaintiff that lasted six months. She did not believe that the plaintiff was on shift or using a Town vehicle when he visited her. The plaintiff reportedly stated that he did not have a relationship with this individual, and, consistent with her interview, that he had never gone to her house while on shift or with a Town vehicle. While the plaintiff initially reported that he had had sexual relations with this individual once, he later reported that he had had sexual relations with this individual twice.

Another individual reportedly stated that she had met the plaintiff at a CPR recertification class at the Town's Police Department. The plaintiff "pushed things beyond flirting" and "creeped" her out. The plaintiff did not recall the incident. Another individual reportedly stated that she once saw the plaintiff coming out of the women's bathroom at a fire station early one

---

[1] In the version of the report disclosed to the plaintiff and in the summary judgment record, the names of the interviewees, as well as some potentially personally identifying details of their statements, are redacted.

[2] Although the names are redacted, the context of the plaintiff's response makes it reasonably clear which responses concern which individuals.

morning, that he had told her that the bathroom was all clean, but that he was not carrying any cleaning supplies. Other individuals reportedly stated that the plaintiff had told them about various sexual encounters he had had in the workplace.

As to sexual misconduct and harassment of male employees, the report details interviews with five individuals, including the plaintiff. Two individuals reportedly stated that the plaintiff had entered the locker room at the Fire Department headquarters holding his phone up in his hand as they were about to shower. Another individual reportedly stated that he had seen the plaintiff on multiple occasions follow others into the locker room as they were about to shower. Two of the individuals reported that they would not shower when the plaintiff was in the building. Another individual reported that when he went to change in the back of a truck after a diving exercise, the plaintiff waited inside the truck instead of leaving. The plaintiff reportedly denied that these incidents took place.

As to the allegations that the plaintiff violated his administrative leave order (not to have contact with Fire Department personnel while on leave), one individual reportedly stated that he had received a phone call from the plaintiff while the plaintiff was on leave. The plaintiff reportedly admitted to speaking with this individual while on leave, but he stated that the conversations were personal and unrelated to the Fire Department.

After summarizing the investigation, the report lists about two dozen "Findings of Fact," most of which reiterate details from the earlier summaries, including that the plaintiff had continued to pursue a relationship in the workplace that had ended after being rejected; that the plaintiff had made sexual advances toward an individual while conducting a training class; and that the plaintiff had on at least three occasions been in the men's locker room at the same time as others, with his phone out.

After listing the findings, the report ends with three pages of conclusions, including that the plaintiff subjected an individual to "unwanted sexually offensive behavior that was sexually harassing and intimidating to her;" that the plaintiff "has committed sexual harassment and sexual assault in his position of Lieutenant . . . while on duty;" and that the plaintiff made multiple Town employees feel uncomfortable through his actions. The report also concludes that there was insufficient evidence to sustain an allegation that the plaintiff had engaged in sexual activity in a Town building while on duty. The report ends with this:

> As the investigating officer, I conclude that Lieutenant LaFlash has engaged in behavior that violated the Town of Auburn's Sexual Harassment Policy, Town of Auburn's Workplace Bullying Policy, [and] Auburn Fire Rescue Department's Code of Conduct[.]
>
> Based on the evidence, Lieutenant LaFlash may be a sexual predator, and I recommend the termination of his employment.

(Docket No. 34-6 at 15). On December 24, 2019, the day after Johnson sent the report to Coleman, Coleman sent the report to the Town Manager.

### 2. *The Termination*

On December 27, 2019, Coleman informed the plaintiff that he would be conducting an informal hearing on January 3, 2020 to consider whether to terminate the plaintiff's employment "following an investigation into allegations of misconduct, sexual misconduct, and sexual harassment." The letter outlined the allegations of harassment and misconduct contained in Johnson's report and stated that the alleged conduct violated the Fire Department's code of conduct and the Town's policies on sexual harassment and workplace bullying. Coleman also informed the plaintiff that he had the right to attend the hearing and present oral argument and documentation in response to the allegations.

On December 31, 2019, Coleman sent redacted copies of Johnson's report to the plaintiff. He also agreed to postpone the hearing to January 8, 2020, at the plaintiff's request. At the hearing

5

on January 8, 2020, the Town, through counsel, introduced the charges against the plaintiff, a summary of the evidence, and notice that the proposed disciplinary action was termination. The plaintiff, appearing with his union representative, presented oral argument in response to the allegations. After the hearing, on January 9, 2020, Coleman notified the plaintiff that he found sufficient evidence to support the charges against him, and that the plaintiff's employment was terminated.

At the time of the plaintiff's termination, the Town had a Collective Bargaining Agreement ("CBA") with the International Association of Firefighters, Local 4157 (the "Union"). The CBA recognizes the Union as the exclusive bargaining representative for the Town's Fire Department officers, including full-time lieutenants. Article XI of the CBA states, *inter alia*, that no permanent fire officer shall be disciplined, suspended, or discharged without just cause, and that all discipline, suspension, and discharge decisions "shall be subject to the grievance procedure up to and including arbitration."[3] Article XIII outlines the grievance procedure. At step one, after a grievance is filed, a hearing shall be held between the aggrieved officer, the Fire Chief, and the Steward or his designee. Within seven days of the hearing, the Chief shall submit his answer to the Union. At step two, if the dispute is not resolved, the aggrieved officer or the Union may forward the grievance to the Town Manager. Another hearing shall be held, after which the Town Manager will submit a reply. The CBA states that a failure to reply is considered a denial. At step

---

[3] The Town also had a Personnel Policy Manual, which contained a set of procedures to serve as "a guide to supervisors of the disciplinary process within applicable non-civil service Town wide departments." The Manual's procedures for employment termination included drafting a letter of termination, serving the letter to the employee, and informing the employee that the letter would be documented in the employee's personnel file. The procedures also noted that prior to imposing a termination, an employee may be entitled to a *Loudermill* hearing. The Manual, so far as can be gleaned from the record, made no mention of post-termination procedures.

three, if the dispute remains unresolved, the Union or the Town may submit the grievance to arbitration.

On January 12, 2020, the Union, pursuant to the CBA's grievance procedures, filed a grievance for reconsideration of the plaintiff's termination. The grievance was denied, apparently without a hearing. Thereafter, the Union forwarded the grievance to the Town Manager. The Town did not respond to the grievance, which, under the CBA, also constituted a denial.

The Union conducted its own investigation into the allegations against the plaintiff, and, on February 17, 2020, the Union Executive Board voted not to pursue the plaintiff's grievance further or seek arbitration. The decision by the Executive Board was affirmed by a near-unanimous vote (33-1) of the membership of the Union. The Union told the plaintiff that it did not seek to arbitrate his grievance because, after considering all the evidence presented by the Town and interviewing relevant witnesses, it did not believe that there was sufficient evidence to justify arbitration. After the Union voted not to bring the grievance to arbitration, the plaintiff requested permission from the Union to proceed with arbitration himself; the Union refused.

Following the Union's refusal, on August 21, 2020, the plaintiff commenced this action against Johnson, Coleman, and the Town. He alleges that Johnson defamed him by stating that he "may be a sexual predator" (Count I), and that Coleman violated his procedural due process rights by failing to convene a post-termination hearing after causing his termination (Count II). He also asserts that the Town should be ordered to convene a post-termination hearing at which he should be allowed to examine witnesses and evidence (Count III).

Separately, on September 4, 2020, the plaintiff filed a claim against the Union with the Massachusetts Department of Labor Relations alleging, *inter alia*, a breach of the duty of fair

representation by the Union in connection with his termination by the Town. On January 22, 2021, the Department of Labor Relations rejected the plaintiff's claim.

## **Legal Standard**

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue is "genuine" when a reasonable factfinder could resolve it in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it may affect the outcome of the suit. *Id.* When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

## **Discussion**

### *1. Defamation*

The defendants contend that summary judgment is appropriate on the plaintiff's defamation claim because Johnson's statement that the plaintiff "may be a sexual predator" constitutes non-actionable opinion. Under Massachusetts law, whether a statement is actionable for defamation turns in part on whether the statement is of fact or opinion. *See Scholz v. Delp*, 41 N.E.3d 38, 45 (Mass. 2015). If a statement unambiguously constitutes either fact or opinion, then the question whether it is actionable is for the court to decide. *Id.*; *Lyons v. Globe Newspaper Co.*, 612 N.E.2d 1158, 1162 (Mass. 1993).[4] If, in contrast, a statement reasonably could be understood either way,

---

[4] "The determination whether a statement is one of fact or opinion is generally considered a question of law." *Cole v. Westinghouse Broadcasting Co., Inc.*, 435 N.E.2d 1021, 1025 (Mass. 1982).

then the question whether it is fact or opinion is for the jury. *Scholz*, 41 N.E.3d at 45; *King v. Globe Newspaper Co.*, 512 N.E.2d 241, 244 (Mass. 1987). "In determining whether a statement reasonably could be understood as fact or opinion, a court must 'examine the statement in its totality in the context in which it was uttered or published,' and 'must consider all the words used, not merely a particular phrase or sentence.'" *Scholz*, 41 N.E.3d at 45 (quoting *Cole v. Westinghouse Broadcasting Co., Inc.*, 435 N.E.2d 1021, 1025 (Mass. 1982)). In this analysis, a court should consider "the specific language used," "whether the statement is verifiable," "the general context of the statement," "the broader context in which the statement appeared," and "any cautionary terms used by the person publishing the statement." *Id.* (quotations and citations omitted).

The plaintiff argues that because sexually violent predators must register with the Massachusetts Sex Offender Registry Board, *see Doe v. Sex Offender Registry Bd.*, 857 N.E.2d 473, 475 n.3 (Mass. 2006), Johnson's assertion that he "may be a sexual predator" is objectively verifiable. The plaintiff fails to explain why, however, the Court should equate the phrase "sexual predator," as used in Johnson's report, with the term "sexually violent predator," as defined under Massachusetts law.[5] Indeed, it is apparent from the context of Johnson's report that Johnson was not insinuating that the plaintiff was violent; only that the plaintiff continuously targeted others in sexually harassing or inappropriate ways. As compared to the statutory definition of the term "sexually violent predator," therefore, Johnson's use of the phrase "sexual predator" was in "a

---

[5] Mass. Gen. Laws c. 6, § 178C, defines "Sexually violent predator" as "a person who has been convicted of a sexually violent offense or who has been adjudicated as a youthful offender or as a delinquent juvenile by reason of a sexually violent offense, or a person released from incarceration, parole, probation supervision or commitment under chapter 123A or custody with the department of youth services for such a conviction or adjudication . . . and who suffers from a mental abnormality or personality disorder that makes such person likely to engage in predatory sexually violent offenses."

loose, figurative sense." *Cole*, 435 N.E.2d at 1025 (quoting *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974)); *see also Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128 (1st Cir. 1997). *Cf. Myers v. Boston Magazine Co., Inc.*, 403 N.E.2d 376, 380 (Mass. 1980) (collecting cases involving "protected hyperbole or rhetorical excess" including use of the words "traitor," "blackmail," "fascist," and "bastard").

The phrase "sexual predator" aside, the challenged statement also contains a cautionary term, "may," which signals that Johnson was "indulging in speculation." *Scholz*, 41 N.E.3d at 46 (quoting *King v. Globe Newspaper Co.*, 512 N.E.2d 241, 246 (Mass. 1987)). Moreover, in context, the statement was at the end of a fourteen-page report concerning allegations that the plaintiff had engaged in sexual misconduct and sexual harassment. Leading up to the challenged statement, Johnson detailed his investigation, made findings of fact, and drew several conclusions from those findings, none of which the plaintiff contends is defamatory. As the final sentence of the report, Johnson writes, "Based on the evidence, [the plaintiff] may be a sexual predator, and I recommend the termination of his employment." Johnson plainly was "expressing a subjective view, an interpretation, a theory" about the evidence he gathered. *See Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993). No reasonable jury could view the statement, in context and with its cautionary language, as a statement of fact.[6] Thus, as a matter of law, the challenged statement constitutes a statement of opinion.

The plaintiff argues that, even if Johnson's statement is a statement of opinion, it is actionable because it implies a basis in undisclosed defamatory facts. The Court disagrees. When

---

[6] The case of *Atwater v. Orlando*, 2014 WL 1343276, at *2 (Mass. App. Ct. 2014), an unpublished decision from the Massachusetts Appeals Court, is not to the contrary as, here, the cautionary language and context make evident that Johnson's statement constitutes opinion.

the basis of an opinion is disclosed, the statement is not actionable "no matter how unjustified and unreasonable the opinion may be or how derogatory it is." *Nat'l Ass'n of Gov't Emps., Inc. v. Cent. Broad. Corp.*, 396 N.E.2d 996, 1001 (Mass. 1979) (quoting Restatement (Second) of Torts § 566 comment c, second par. (1997)). Johnson's opinion plainly has a "logical nexus" to the facts laid out in detail over the preceding pages. *Scholz*, 41 N.E.3d at 47; *King*, 512 N.E.2d at 246 (contested cartoon was based on facts disclosed in a previously published article); *Lawless v. Estrella*, 160 N.E.3d 1253, 1259 (Mass. App. Ct. 2020) (contested statement came "at the end of a six page e-mail setting forth a myriad of disclosed nondefamatory facts"). Johnson's opinion may be unjustified, unreasonable, and derogatory, but its basis clearly is disclosed. *See Lyons*, 612 N.E.2d at 1161. Thus, summary judgment is warranted on the plaintiff's defamation claim.[7]

## 2. Procedural Due Process

The defendants argue that summary judgment is warranted on the plaintiff's procedural due process claim because the Town held a pre-termination hearing, and the plaintiff had an opportunity for a post-termination arbitration hearing through the CBA. The plaintiff asserts that Coleman violated his procedural due process rights by not convening a post-termination hearing.

The Constitution prohibits the government from depriving a person of life, liberty, or property without due process of law. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). A public employee with a "reasonable expectation" of continued employment has a property interest in his continued employment. *See Wojcik v. Massachusetts State Lottery Com'n*, 300 F.3d 92, 101-02 (1st Cir. 2002). Here, the parties agree that the plaintiff had a property interest in his continued employment with the Town.

---

[7] The Court need not reach the defendants' contention that the statement is protected by a conditional privilege, nor the plaintiff's response that additional discovery is needed to determine whether the conditional privilege is lost.

Although the plaintiff's procedural due process argument focuses on the lack of a post-termination hearing, "[p]re-termination and post-termination proceedings are not evaluated for constitutional adequacy in isolation from each other; a reviewing court studies the totality of the process received in light of the factual record to determine if the procedural due process was sufficient." *Senra v. Town of Smithfield*, 715 F.3d 34, 39 (1st Cir. 2013).

Here, as stated, Johnson investigated allegations of the plaintiff's misconduct by interviewing over a dozen individuals. His investigation concluded that the plaintiff had violated various Town and Fire Department policies. Coleman convened an informal hearing on the allegations, providing the plaintiff with notice of the charges against him, a summary of the evidence supporting the charges, and an opportunity to respond. The plaintiff attended the hearing with his Union representative and presented oral argument in response to the allegations. Following the informal hearing, Coleman terminated the plaintiff's employment. The CBA between the Union and the Town set forth post-termination grievance procedures. Pursuant to the first two steps of the CBA's procedures, the Union filed grievances for reconsideration with Coleman and the Town. Contrary to the CBA's procedures, no hearing was held. Nonetheless, Coleman and the Town denied the grievances. Before moving to the third step of the grievance procedure -- arbitration -- the Union conducted its own investigation into the allegations against the plaintiff. Following that investigation, the Union Executive Board voted not to seek arbitration. The full membership of the Union then affirmed the Executive Board's decision by a 33-1 vote. The plaintiff ultimately requested to proceed to arbitration himself, but the Union refused.

The pre-termination process plainly was adequate. Under *Loudermill*, 470 U.S. at 542, only "some kind of a hearing" is required before termination. While an employer must provide the employee with notice of the charges against him, an explanation of the employer's evidence,

and an opportunity to respond, the hearing "need not be elaborate." *Id.* at 545-46. Here, it is undisputed that before Coleman terminated the plaintiff's employment, Coleman provided the plaintiff with notice of the charges against him, an explanation of the Town's evidence, and an opportunity to respond at an informal hearing.

As to the post-termination process, the CBA's grievance procedures provided the plaintiff with an opportunity to proceed to arbitration. *See Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004) ("The law is well-established that it is the *opportunity* for a post-deprivation hearing before a neutral decisionmaker that is required for due process.") (emphasis in original). The CBA was agreed to by the Union and the Town. The Union was the plaintiff's "sole and exclusive bargaining representative." *Jackson v. Temple Univ. of Com. Syst. Of Higher Educ.*, 721 F.2d 931, 933 (3d Cir. 1983). Although the CBA granted the Union, not the plaintiff, the power to decide whether to pursue arbitration, the Union had a duty to represent the plaintiff fairly. *See Office and Prof'l Emps. Int'l Union, Local 6 v. Commonwealth Emp't Relations Bd.*, 139 N.E.3d 1182, 1186-87 (Mass. App. Ct. 2019).

Every court to consider this issue -- so far as this Court is aware -- has concluded that grievance procedures in collective bargaining agreements like the CBA can satisfy a terminated employee's procedural due process rights, even when the employee's union decides not to take the employee's grievance to arbitration. *See, e.g.*, *Rhoads v. Bd. of Educ. of Mad River Local School Dist.*, 103 Fed. Appx. 888, 897 (6th Cir. 2004); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998); *Armstrong v. Meyers*, 964 F.2d 948, 951 (9th Cir. 1992); *Jackson*, 721 F.2d at 933; *Winston v. U.S. Postal Service*, 585 F.2d 198, 210 (7th Cir. 1978); *Bowles v. Macomb Community College*, 2021 WL 1837742, at *6 (E.D. Mich. May 7, 2021).

13

Indeed, this case is much like *Armstrong*. There, after a public university fired an employee, the employee requested a hearing to contest his termination but was told that he needed to follow the grievance procedure established by the collective bargaining agreement between the university and his union. *Armstrong*, 964 F.2d at 949. Under the agreement, the union had the exclusive right to bring the grievance to arbitration. *Id.* The union decided not to do so.[8] *Id.* In assessing whether the grievance procedure nonetheless provided the plaintiff with the process he was due, the court reasoned that while the employee had a substantial interest in keeping his job, the risk of erroneous termination under the procedure was not large, and the public interest in maintaining an effective grievance process to settle disputes between employers and employees was strong. *See id.* at 950-51. Although the union could and did decide not to take the employee's claim to arbitration, the union did so under a duty of fair representation and was subject to suit for any breach of that duty. *See id.* at 951.

Here, the undisputed facts are materially indistinguishable, and the plaintiff has cited to no First Circuit precedent that would suggest a contrary result. While the plaintiff's interest in his continued employment with the Town is strong, the process the plaintiff received creates little risk of erroneous deprivation. Respect for the CBA's grievance procedures, moreover, especially considering the plaintiff's ability to hold the Union accountable to its duty of fair representation, is consistent with the public interest. Accordingly, on balance, even though a post-termination hearing was not held, the plaintiff received the process he was constitutionally due.[9] No additional

---

[8] The union told the employee he could bring the grievance to arbitration at his own cost, but for the purpose of its opinion, the court considered such action to be the same as refusing to take the claim to arbitration. *Armstrong*, 964 F.2d at 950 n.2.

[9] The plaintiff's reliance on the Town's Personnel Policy Manual is misplaced. First, the Manual does not state that a post-termination hearing is required. Second, and more importantly, the question whether the Manual entitles the plaintiff to a post-termination hearing is distinct from

process, such as Coleman convening a post-termination hearing, was constitutionally required, and summary judgment is warranted.[10]

### 3. Injunctive Relief

The plaintiff's claim for injunctive relief -- an order that the Town convene a post-termination hearing consistent with his due process rights -- is derivative of the plaintiff's due process claim. Contrary to the plaintiff's assertion at the hearing on this motion, the defendants have moved for summary judgment on this claim. The Court discerns no other basis in the plaintiff's complaint for injunctive relief aside from his procedural due process theory. Accordingly, because summary judgment is warranted on the plaintiff's procedural due process claim, summary judgment likewise is warranted on the plaintiff's claim for injunctive relief.

## Conclusion

For the reasons stated, the defendants' motion for summary judgment is ***granted***.

**SO ORDERED**

                                      */s/ Timothy S. Hillman*
                                      **TIMOTHY S. HILLMAN**
                                      **DISTRICT JUDGE**

---

the question here -- whether, by not convening a post-termination hearing, Coleman violated the plaintiff's procedural due process rights.

[10] The Court need not reach the defendants' contention that Coleman is entitled to qualified immunity, nor the plaintiff's response that additional discovery is needed to determine whether that is so.